Good morning. May it please the court, my name is Stephanie Atractas and I represent the appellate petitioner, Mr. Zachary Robey. Mr. Robey's trial counsel was prejudicially ineffective because he failed to object to the prosecutor's closing argument where she misstated the law concerning a critical element of the exhortion charge. Mr. Atractas, I understand that you do not challenge the robbery conviction nor the possession of meth conviction, is that correct? That's correct, your honor. What effect does that have to what you're arguing?  They were entirely separate from the extortion incident and they were unchallenged in the state court as well as in the federal courts. But why didn't they have sentences with them as well, did they not? They did, your honor, and it is true that this sentence on the extortion charge, three years, was unconcurrent to Mr. Robey's sentence on the other matters. So if this court were to grant a misrelief in this case, it could have the effect of reducing his liability on the exhortion charge to an attempt or perhaps vacating the conviction but would not change his sentence. So his sentence would be the same and he'd still be in prison for the same amount of time, right? Very likely. I can't say for certain how the state court would handle vacating the exhortion charge, but it would be highly likely that it simply affects his criminal history. Yes, your honor, it would. All right. I just want to make sure of that because that was so surprising to me that we're really arguing about something that may not have much effect on his time. Right. On his time, it would not, on his history, it would. Okay. So Mr. Robey's testified at trial in his account of that. Let me ask you another question. My colleagues can interrupt me all they want to in a couple of questions that I had. It's my understanding that the state court in this particular matter has suggested that there was no problem with what happened here. The state court of appeal held that the- Even as, I'm just talking, sorry, I should have been more clear in my question. The state court suggested that there was no problem as it related to California law. The state court of appeal construed the prosecutor's argument as- But as to California law, the state court suggested there was no violation or no problem, but is it saying he could not get any relief on this particular claim you're bringing, right? Well, Your Honor, the state law issue is really a sub-issue of an ineffective assistance of counsel claim, which is the federal constitutional claim here. So the state court's construction of its own law doesn't actually entirely resolve the issue because this is a federal constitutional claim. These aren't ineffective assistance of counsel claims. I understand what you're saying. My worry about this is if we're talking about California law here, and when I read California law, it says that extortion is the obtaining of property from another with his consent, induced by wrongful use of force or fear, and are under color of official right. But then it says under People v. Robie, which is the California court of appeal of October 7, 2009, that one can show that the defendant obtained the property from the victim by showing that the defendant or an agent of the defendant received the property. It seems to me that's what your claim is here. Well, Your Honor, it's not our claim that state law does not allow extortion to be completed through an agent. We understand and conceded in the brief that that is correct, that agency can be a component of an extortion charge. However, the prosecutor's misstatement of law in this case was more basic and elemental. She said we don't have to prove that Mr. Robie actually received the money, and whether or not the money is transmitted to Robie through an agent or directly, the prosecutor is required to prove that he actually received the money. Well, why couldn't I? Your Honor, I'm just about to say, what is the record showing Mr. Robie received the money? The record shows that Mr. Isla testified that he gave $500 to Mr. Garcia and that Robie and Garcia then drove away in a vehicle purportedly to get Mr. Isla's Mustang. Mr. Garcia came back alone on foot and, according to Isla, was angry. Now, the testimony after that is related to another claim that we bring because Mr. Isla was permitted to testify in trial, and when Garcia came back from the outing with Robie, that he didn't have the $500. And the only evidence that Garcia gave the money to Robie was this hearsay testimony from Isla, who admitted at the preliminary hearing that he had no personal knowledge that Mr. Garcia gave the money to Robie. It was simply hearsay from Garcia. Now, in the context of the entire trial, this testimony in and of itself is very dubious because Mr. Garcia was in jail at the time, and the prosecutor could have called him to testify, said on the record that she didn't want to hear from him. So this issue of getting the $300 was a no-no. But they were in cahoots, were they not? All three of them had issues. If you say there's problems with what all of them would have had to say, what Isla had to say didn't make any sense, and he contradicted his own sworn testimony from the preliminary hearing. So what we're going to do is... Well, I guess what I was going to ask you is that it seems to me with the words of the prosecutor, why is it unfair for the district court to have determined that the prosecutor meant that the defendant did not personally or directly have to receive the money, but could do it through an agent or intermediary? Chair Garcia? There's two problems with that. One is that's not what the prosecutor said. Well, I'm not sure what the prosecutor said because I've read his statement, and you've recorded it. It seems to me in the context, one can say what one wants. But my worry is that, looking at it, I'm having a tough time under my standard of review determining why this would be error. Well, she explicitly said we don't have to prove that he actually received the money, which is different from saying he received the money through an agent. Yes, but it isn't different from saying she didn't have to get the money correctly. She didn't have to get the money personally. She could have got it through an agent. I agree she didn't say she could have got it through an agent, but I'm having a tough time with how you're necessarily phrasing this under my standard of review suggesting this is error. Well, the other issue with the idea that the prosecutor's argument was correct and valid is that the trial court never told the jury what the elements are for them to actually decide that Garcia was Roby's agent. It should have been. Yes, but was there any evidence contrary to the agency agreement? Yes, because Mr. Roby never said that he. Yes, because Mr. Roby never said. Was there any evidence contrary? Was there any argument contrary? The testimony at trial, which was that Esquad decided to give the money to Garcia because he was afraid of Roby, and he said, I gave it to Garcia. But in order to prove that Garcia was actually Roby's agent, Roby would have had to have control, the right to control the activities of Garcia, which is the essence of agency under California law. There was absolutely no evidence that Roby was controlling what Garcia did, such that he received the money by Garcia. Did the rest of the folks who are complaining about Lewis, they didn't ask for an agency instruction? You haven't talked about that? Because, allegedly, then that would have cured the problem. The trial court had a corresponding duty to instruct us to the elements of the crime, so the failure to request the instruction was not fatal to that case number claim. It brought up a failure to instruct us to agency. If I may reserve a little more time. Thank you. Good morning. Gregory Ott for Respondent. The question of whether ISLA was going to give $500 to Garcia and to Roby and how that transfer was to take place was never an issue, was never a dispute, which was one of the points that really drives the harmlessness argument here. The cases overlapped on that point. The issue was why was the money being given? Roby said, well, I sold him methamphetamine and I gave him the money, and he said he'd give me the car or some money. The prosecution's version and ISLA's version was that, no, he extorted it from me. But the parties and the arguments were in agreement on the point that ISLA was going to give $500 to Garcia, and Garcia was going to give that to Roby. When you say the harmlessness argument, you are saying that the performance of counsel was deficient, that there was no prejudice in scheduling amnesties to Roby. Your Honor, no, I skipped over that. But, no, actually, I do not believe that the counsel, either trial or appellate counsel, was defective. The point about the statement that was made, down-notice, is the prosecutor down-noticed. There's no requirement for me to prove that the defendant actually received the money. Trial counsel was there. The court was there. We don't know where the emphasis, if there was any emphasis, was in this statement. The trial, as the state court pointed out, depending on how you, where you put your focus, you can interpret the statement different ways. But, ultimately, I don't think it really does. I mean, if you focus on the defendant, well, the state law says you can give it, that the element was satisfied once you gave it to Garcia. So, strictly speaking, the defendant didn't literally have to give the money. If you focus on receiving, well, he didn't have to ultimately receive it, as long as Garcia got it. But, regardless, the state court was reasonable in saying, look, we don't know where the emphasis was. If there was any, we don't see it as a misstatement of state law, which is a binding finding that is to not misstate state laws. So, what do you say to counsel's argument, which is the prosecutor can't either get up and say, I don't have to prove that this particular person got the money. That was sporadic. What she's saying is, by the prosecutor getting up and saying, I don't have to prove that Roby got the money, or really saying, I don't have to prove Roby got the money one way or another, by an agent or otherwise. And that's wrong. Well, that's not an interpretation, but I think a reasonable interpretation. And, since we pursued counsel, it was effective. I think counsel heard that statement and believed that it was accurate, however the statement was applied. I see your interpretation, Your Honor. But that is not my interpretation. Well, that's counsel's interpretation, which I tried to put in the most effective way. It could be interpreted various ways, but whether the state court was reasonable in saying, hey, you can't just use your opinion in the context of the case. Right, Your Honor. And speaking of context, I neglected to mention, right after that statement about now I don't have to show, the prosecutor says, end quote, but remember the only thing you have to decide, beyond a reasonable doubt, did Mr. Disluk give the money to the defendant, which is what the instructions say. And that, like, how that statement, when you look at that statement, it certainly counterindicates that she was trying to misstate the law just moments earlier when she said, no, I don't have to prove that defendant actually received the money. Did Isla testify, as I understand it, Isla testified that he was to give Roby $500, right? Correct. Isla testified that he gave Garcia the money, had arranged for Roby to have Garcia give it to Roby, right? Correct. And Garcia left the money in Roby's car. That was Isla's testimony. And recall that he left it in the car. I thought he gave it to him. Okay. The limit that Roby and Garcia left in a car, maybe that's what you meant. That's what I mean. Yes, Your Honor, that's correct. So Roby, he testified that Isla was to give him $500, as I understand it. Correct. He also testified that Isla gave Garcia the money, right? Right. Did he testify that Isla had arranged for him to have Garcia give it? I don't recall him testifying to that as such, but it was certainly clear that he understood that was how the transfer was going to take place. He testified that he left it with Garcia in the car, and Garcia was going to give him the money. Ultimately, he didn't give him the money, according to Roby, because they stopped signing. I understand that. I understand that. I'm just trying to figure out what the evidence suggesting all of this happening was, and I tried to lay it out so that I could see if there was enough evidence here based on what the prosecutor is saying. Your Honor, there were two ways to prove that last element. One, under state law, one is that Isla gave the money to Garcia with everyone's understanding that Garcia was going to give it to Roby. Or was Isla's testimony? Yes. Go ahead. Roby also said that, right? That's correct. So, in that respect, the parties agree, which was my point earlier about an overlap in the case. Then there's an alternative theory, which is that Roby, in fact, received that $500. Now, there, the evidence is in dispute. The evidence. All I'm trying to do is lay out the evidence as I saw it. A couple of days later, Roby went shopping, right, That's correct. And he somehow had money. That's correct. That adds to the evidence of what we have here. That's right. The state court briefly affirmed that he got the money because of that, because of the fact that Garcia came back without a car and angry. That's right. If the highest ineffective assistance of the appellate council, what do you have to say about that? I really think that point, that both of those arguments are driven by the point I made earlier, which is that the parties were in agreement, at least on one theory, that WFOR was met. As the appellate council points out, giving an instruction on the agency would have only filled in the alleged gap and made it worse for Roby. It certainly could have made it better, because it laid out the propriety of the money, or not the propriety, but laid out exactly followed what happened, or the testimony. Do you have further arguments for WRunner? If the court has no further questions, I would submit it. If you may submit. Thank you. You have 41 seconds left, counselor. I'll give you a minute. If you get the predicate for your inadequate representation when you head with the state court, finding on the underlying issues that there wasn't any error, not with regard to inadequate representation, but with regard to the substance of the case. The state court opinion was based on an interpretation of the facts, which is not supported by the record. In this case, the biggest flaw of the prosecution's case. It's not a constitutional violation, it's not. I mean, the state court knows what it does, whether they were right or wrong. It seems to me that you don't get your predicate that you're asking for on the inadequate representation on a federal and constitutional level. Understood, Your Honor. However, the biggest flaw in the prosecution's case here was that there was no evidence that Garcia did give the money to Roe V. And what the prosecutor was doing with her argument was essentially saying it doesn't matter whether he gave you the money or not. There's evidence. Rudy's out spending money freely a couple days later in a bag full of stuff at a shopping mall. That's substantial evidence. Admittedly, a methamphetamine dealer could have gotten that money from another source. There was no evidence that he did. That's a jury question. It's true, Your Honor, but it also doesn't prove that Mr. Garcia actually gave the money to Roe V, which was an essential evidence. It's a reasonable inference. It's an inference, but it doesn't prove beyond a reasonable doubt that there was actual receipt would have required some direct evidence of transfer. And our standard of review is what? The state court decision must be objectively unreasonable or an objectively unreasonable determination of the facts that is an argument of the court. No, that was my wording. Was I asking you questions before giving my standard of review? This is a tough case for you. Would you agree? Well, Your Honor, it's been a pleasure representing Mr. Roe V in this case. Well, go ahead. It's been a pleasure having you, and we appreciate your argument. Thank you very much. As I understand it, you are a CJA employment. I am. Thank you so much for doing that and being here and for your good argument. Thank you both. Case 14-6978 is submitted.
judges: Schroeder, N.R. Smith, Piersol